Mora v. Lancet Indemnity Risk Retention Group. Good morning, Your Honors. May it please the Court, my name is John Mumford. I'm counsel for Lancet Indemnity Risk Retention Group. This appeal presents the issue of what a liability insurance company is supposed to do when it's insured, refuses to communicate with it about a lawsuit. In this case, Dr. Malik in Maryland had two practice entities, Union MultiCare. Excuse me? My answer to that question is to do what they did here. What's that? We tried to find them. We engaged them. We did exactly what the policy said we're supposed to do, which is to engage defense counsel to provide a defense to our insurer. He didn't go to court. He did not go to court because he believed ethically he couldn't. That's what lawyers do, go to court. Well, they go to court when they have clients who have engaged them and when clients have consented to their appearance. You only had one client? You didn't have a client of the insurer also? No. There was one named party. Who was the client? Who was the client? The person who was named in the lawsuit, Your Honor. The insured was the client. Because the insured was named in the lawsuit, people, attorneys go to court. And the insurance company was not the client? In Maryland, they have a dual interest doctrine that allows an attorney to consider the interests of both the insurance company and the insured. It does not, that doctrine in the cases that talk about that. Who made the decision that he wasn't going to go to court? What's that? Who made the decision not to go to court? Mr. Kelly. Does this record show? Mr. Kelly testified. Well, did he make the decision not to go to court? He told the insurance company. Did he consult with an ethics expert? He told the insurance company that ethically he could not go to court. Well, then did the insurance company get another lawyer? No. Why didn't they hire a lawyer who could go to court? Because no one could go to court. Well, you got notice. No one could go to court. That's the problem here. Right, and you didn't go to court. And you got a default judgment. If you talk to an, and whose fault was that? If you talk to attorneys about this case, the concept that you can go to court. Your position here would encourage your insured, you'd be in, one to encourage your insured not to cooperate. That gets you out from under the policy. Well, why would an insurance company do that? And here they didn't. Well, you got out, you say because you didn't, because your lawyer didn't go to court, because y'all didn't show up, you get out from under the coverage. This is a contractual insurance policy. We're not a guardian for our insureds. We don't, we have an obligation to do what the policy says. And this policy says our obligation was we have the right. You're a fiduciary for your insured, aren't you? We are, not in this capacity. Not in trying to chase them down and tell them to answer a lawsuit. Not in saying come back from Pakistan where you fled because the federal government's after you and come back and defend this thing. And the answer is a lawyer could not enter an appearance. See, the problem with your lawyer could not argument is, of course, this case went to trial, and you had a pretty established lawyer testify, Maryland lawyer testify as an expert, saying, oh, yes, indeed, you could go to trial. So you, I don't know, a couple of minutes ago, were saying, well, you ask any lawyer, you talk to lawyers about this, and they said they couldn't possibly go to trial. Well, I'm not so sure that's so. The record in this case belies that. You're right, and it doesn't matter. What matters is what the law says. And that's why this is a legal issue and not a factual issue. Can legally an attorney enter an appearance in court for a client they've never, ever spoken to? And the Maryland Rules of Professional Conduct speak to that. Rule 19-1301.8 says that an attorney can't represent a client where there's an insurance company footing the bill unless the client has informed consent. And that informed consent is defined specifically as formed after the lawyer has communicated with the client. He has to talk to the client. Rule 13, Rule 19-301.2a requires to abide by counsel to abide by a client's decisions concerning the objectives of the representation. What about the provisional defendant contract that says you have a duty and a right to defend any claim? With the right and duty to defend language, which is a short quote of what it actually says, does not establish the ethical obligations of a Maryland attorney to their client. So the insurance policy itself typically has a coverage provision, contractual provision for coverage, and then it has a duty to defend. You are putting them all together that the duty to defend, ability to be able to defend, triggers coverage. But if you can't, in other words, if the plaintiff doesn't show up, the fault judgment's in it, a big verdict comes up, why is it not coverage? Because they didn't cooperate. I'm saying they didn't cooperate, but you gave coverage. And that has nothing to do with the plaintiff. Plaintiff has coverage. Based upon having gone to this doctor, you have coverage, representing you providing insurance. He doesn't show up. You don't show up. The fault judgment enters, receive the damages, whatever amount, coverage. Because you didn't show up. That's why the policy has a non-cooperation provision. It says if you don't cooperate, view the insurance, it's your contractual obligation to cooperate in your defense, and if you don't do it, and it's prejudicial to us, you don't get coverage. So the insurance companies incentivize not to have the defendant ever show up to court. Why don't you tell every client, don't show up, go to another country. Because we'll end up in DJs like this every time. You mentioned, you were about to say, if you ask other lawyers. There were some other lawyers in this case, and they testified. There were some who were experts in this area, and as I understand, they represented. This is not the way they would have done it. They would have gone to court and gotten at least the court to say something. So who are the other lawyers that say differently? What I'm saying is that Mr. Kelly. In other words, did you present other lawyers with a different point of view than that? Yes, Mr. Kelly. And he said you did it right. I was explaining to him what Mr. Kelly said. Mr. Kelly said, ethically, I had talked to attorneys in town, and I did not believe I could do this. What I'm saying to you is it doesn't matter what Mr. Kelly thought, what Mr. Brault thought, what Mr. Art thought. What matters is the law. The law. Can an attorney who never talked to a client walk into court and say, here I am. I'm in your appearance for this client? And the answer to that is no. To go there, you would have to accept the naked facts that, well, this attorney only has this client here. This attorney did not come on his own volition. This attorney came from the insurer. It is the insurer's lawyer who then goes to contact the insured. So this is a different scenario than you sitting in your office and someone comes in and presents a case and then walks away. You never hear from it. You've got someone else. You wouldn't be with this doctor had it not been for the insurer. I understand that point, but there's only one. Who's paying you? There's only one party. Who's paying you? Who paid the lawyer? Answer that question. Who paid the lawyer? The insurance company. Because that's their obligation under the contract. Why would the insurance company pay a lawyer and they are not the client of the lawyer? Because it's under Maryland's dual representation doctrine. That's the key. Dual representation. Right. So you had two clients, right? You had two clients, right? You have two parties in interest. Dual representation. You just said it. I did. So you have two clients. Two clients, right? Right. Why did you represent the insured? Because they're not a party to the lawsuit. That's why. You can't magically substitute people to lawsuits. There's one named party to the lawsuit. You know what you do? You don't disrespect the court and just ignore it. You go in and says, we're not a party to this, Your Honor. And any implication the other side won't say we are, we ask to be dismissed. Declaratory judgment or something of that nature. End of the matter. But if you sit home and do absolutely nothing, you end up here. Well, that's the problem. The insurance company did not sit on its hands, did not sit home. The language in the insurance policy says we have the right and duty to defend. And that obligation is limited to the payment of defense costs. That is the obligation. They hired an attorney to go do that. The attorney told them. They don't control the defense? What's that? They don't control the defense? The insurance company doesn't control the defense? I've been involved in a few lawsuits. Insurance companies all the time telling the lawyers what to do, what depositions they ought to take and how they should negotiate and all kinds of things. They control the defense. Insurance companies, certainly when they have a client who they're able to defend, do have an input into the defense. Here they had no client. They control it. There's no party to defend here. The problem is the defendant. So who do we defend? There are procedural requirements. He went to Pakistan. He did. He did go to Pakistan. He could have died. Well, he did die. If he died, his estate could have authorized the appearance. That would have been great. It would have been much easier for the insurance company to have the estate be able to say, yes, please enter an appearance on behalf of this person. But an attorney in Maryland, I mean, this is the Camara case. It touched on this issue. In Chapman v. Camara, Geico was involved. In Geico, they're insured. Renee Cole, her son, was involved in an accident. Geico hires an attorney. There's lawsuits filed against Renee Cole and her son. Geico hires an attorney for them to do a friendly consent judgment so that the injured family members can get money in a settlement with Geico. So counsel enters an appearance without ever talking to this woman and then consents to this judgment. Later on, there's a proceeding in which she challenges saying, no, I never authorized that appearance. The appearance waived the issue of service of process on her, and the Court of Appeals of Maryland were called upon to determine whether the attorney was authorized to appear in the case. And the court said it wasn't. The court said that the court rejected the notion that a standard clause obligating Geico to defend her in a case of litigation created implied authorization. The court held that the Geico-appointed attorney was not authorized to enter an appearance on her behalf where he had never spoken with her. Now, the court didn't delve into the ethics rules in holding that, but the ethics rules basically support that notion that you cannot, as an attorney, enter an appearance in a case with a client you've never spoken with. So it's easy to sit back and say the insurance company sat on their hands, but there's a lot more that went into than that. They actually tried to find this film. They tried to find the doctor. They called him. They emailed him. And if he doesn't respond to them, they cannot tell Mr. Kelly or any other attorney, go down there to that courthouse, enter an appearance, and take position on his behalf. What if this doctor is sitting back in Pakistan and wants to challenge service of process on him later? What if he doesn't want to answer, and some attorney in Maryland goes and enters an appearance for him? Your policy speaks to that. He doesn't want to agree with the way you do stuff. Your policy says you have the final say on the defense in this action. It says we have the right and duty to defend. No, no. It says you have the final say. In other words, if there's a disagreement as to how this matter is being defended, your policy says you have the final say. Now, it says that's in terms of the attorney's duty. If he had a party represent and there's a conflict that arose between us and the insurer, he would have to withdraw. I mean, that's the end result. Don't you say you have a right to be able to defend this case in the manner in which you choose to do so? We have the right and duty to defend. But if you see that in practice and there's a conflict between the insured and the insurance company over the handling of the defense, you'll see the defense counsel will get out of that situation quickly. You argued all this to Judge Zenitz. Correct. You argued all this in Maryland to the district court. Correct. And the court didn't buy any of it. She said that the insurance company was satisfied. So you're saying that's legal error. Legal error. That's your argument here on appeal. Correct. Who can appear? Who can appear and solve this situation? Her other position was that nothing prevented Lancet. Is there any evidence to show whether or not the people in the insurance company told this lawyer not to show up? No. No evidence of that? No. He told them he couldn't. Pardon? He told the insurance company he was unable to. It was one way, him telling the insurance company. Correct. I'm not aware of any evidence in the record that says insurance. Did you all go get a second opinion? What's that? Did the insurance company go get a second opinion? No. An independent opinion as to what they could do? From another Maryland attorney? No. Well, from anybody. An ethics expert. Did you go down to the law school and say there's an expert down there that teaches this stuff? Did somebody go down there and try to find out what the answer was? Mr. Kelly told them that he couldn't. For what? Two and a half million dollars. Two and a half million dollars. I mean, somebody showed up for trial, they may have won this case. I mean, a lawyer may have gone in and won this case. I mean, there's a lot of sympathy for doctors in malpractice cases. I mean, those are the kinds of cases that defense lawyers can win once in a while. A judgment called by a doctor. I'll concede that's a legal issue. That's a factual issue. A judge's determination is what could have happened. That's a practical observation made from the bench that probably doesn't have anything to do with the case. Right. But somebody could have won this case. And that's a factual issue that the judge had. And you all weren't interested. The factual issue the judge decided against me, I'm not spending much time there because that was her factual determination to make. But legally, there was no way the insurance company had a mechanism. It's the how and the why. You know, how can the insurance company do this? It's easy to sit back and say, oh, they sat on their hands, they didn't do anything. But they couldn't do anything. Legally, under the rules of ethics of Maryland, under this Camara case, they did not have the ability to have an attorney go down there. They could not, as the insurance company, make themselves a party and start defending the case in their own name. Do I understand you to say that making this decision not to show up, you didn't ask anybody else, an ethical expert or any other defense lawyers who do this kind of work whatsoever? You just decided not to do it? Well, no, that's not true. We asked Mr. Kelly, the defense counsel in Maryland, and he told us that he was unable to do that. But honestly, it doesn't matter if we asked 1,000 people or none. The law is the law. Well, I didn't ask you about the 1,000 people. I asked him did you ask one. We did, Mr. Kelly. And who is Mr. Kelly? He was the defense counsel that when the insurance company fulfilled its right and duty to defend by appointing him to defend the case, he's the one that told you I can't do this. He's the lawyer who chose not to go, right? I don't know a lot of lawyers who don't want to go to court. Other than the lawyer who chose not to go, did he ask anybody? I mean, when you make a decision of this import, you want to rely upon rules of professional conduct, whether you should or should not. You've got hundreds of folks around that you can ask that question to. But the simple thing is, what's the big deal? Go in the court and explain to the judge, my client is gone. The contract here says we are not to pay money if he doesn't cooperate. Judge, give us a nice little neat order. We'll go home and everybody will sleep well. What's the neat order, though? The neat order will keep you out of court. That's what the neat order would be. He can't enter an appearance to stop. He has to enter an appearance and answer the lawsuit or they're going to be in default. And that's what happened here. And the lawyer said he couldn't. He got in later. Well, he got in. No, he didn't get in later. The insurance company, after liability determination, intervened for the sole purpose of asking the court, please delay this proceeding until we can get a declaratory judgment ruling. That's what happened. Of course, you could have asked, the insurance company could have asked, you don't dispute that, a declaratory judgment, file a declaratory judgment right away. Insurance company. They had their own selves as their client. There's no question about that. In terms of the delay in filing a separate DJ, certainly I can't argue that they couldn't have filed it earlier, but there's no difference in terms of the coverage and liability determination of whether they did or didn't. The insurers either didn't cooperate in a presidential manner or they did. And here, they failed to cooperate. Lancet couldn't find an attorney to go into an appearance without talking to a client. Lancet itself was not a proper party to the suit, and so their hands were tied. Lancet couldn't find an attorney that would go in and defend it? Well, I'm not saying they pulled every attorney in Maryland. I'm saying they were told by the one. This fellow wouldn't go to court, and you're saying you couldn't find another lawyer that would go to court for you? We were, that counsel advised. I mean, insurance companies, they're usually paying clients. I mean, lawyers like to represent them. Right, and you think that if Mr. Kelly had any ability to go do this, he would have gone? No, I'm talking about Mr. Kelly. Mr. Kelly said, I can't do it. That's the way I interpret the rules. I'm not going to do it. Then did you find him? Did you try to find somebody that might be willing to do it? The only question here is whether he was right or wrong. But the question to you to answer is did you try to find somebody else? We know the question that you think controls, but the question to you, the factual question, is did you try to find somebody else? The answer to your question is nothing in the record that shows the insurance company went to find another attorney. Right. But Mr. Kelly advised us that he did talk to other attorneys he respected in the defense bar. That's hearsay from him. He talked to somebody else who gave him a view. You shouldn't go do it because your client's in Pakistan somewhere. Right. So don't go to court. But then you ought to find somebody that will go to court. Legally, we could. I mean, you're on notice. Legally, we could not. You said you weren't on notice, but you were. We were. And the judge found you were. Legally, we could not find someone to go to court. Okay. Thank you. Thank you. Thank you. May it please the Court. Matt Maloney on behalf of the appellee, Claudia Mora, and her children. Your Honors, as has been correctly pointed out, Lancet did have the right to go into court, and that's demonstrated by the fact that they did so. Pursuant to the policy provision, Joint Appendix, page 84, Lancet, having put, agreeing to this policy with its insurers, put a million dollars of its own funds at risk. And very wisely, in exchange for putting those funds at risk, very wisely, they reserved the right to defend any claim. That was Lancet's right. Counsel, in their brief, tried to diminish that by saying that, oh, somehow that's qualified. But it's unqualified. In fact, What are you reading from? I'm reading from Joint Appendix 84, which is the policy paragraph 2. You're reading from the insurance policy. Correct, Your Honor. That's what I wanted you to say. Yeah, get that in there. And, Your Honor, I think it's interesting to point out, in the cooperation language of the policy, and now I'm at Joint Appendix 103, so the cooperation paragraph 25 of the policy, which is at issue in the case and was argued before Judge Zinnes, the language there says that if the insureds, if any failure of the insured to cooperate, that prejudices our ability to defend any claim. Our ability. And the word our is defined in the policy to mean Lancet. So Lancet itself very prudently has reserved the right to protect its financial stake. And if there is something that threatens that, threatens our ability, Lancet's ability to do so, then we have the right to act. And they did act. In this case, they applied to Judge Rubin, the trial judge in the circuit court case, for the right to become a party. Now, today Lancet says, oh, well, that was for a limited purpose. In point of fact, they were made a party. A party to the case has all the rights of any other party. Now, they chose to do that, notwithstanding yours truly had been in contact with Lancet from, literally, from day one. From prior to filing suit, I'd been in contact with them, and the day I filed suit, I mailed them a copy. So they had this lawsuit. You're the one who gave notice? Yes, Your Honor. You sent them everything? Everything. Medical record, the complaint, all the papers associated with the complaint from day one. And they have acknowledged receiving the lawsuit from plaintiff's counsel prior to the end of the policy period. When did they disclaim coverage? They disclaimed coverage October 16th of 2015. So the lawsuit is filed July 24. They disclaimed coverage October 16th, Your Honor, by a letter to their insured. And where does the state court action come in? Help me here. State court action is filed July 24, Circuit Court for Montgomery County. And that case, so that's filed July of 2015. The default judgment is entered August of 2016. And so Lancet— And you know they weren't going to show up? At the default judgment hearing or in the court case? In the court case and the default judgment hearing. I was in contact. I had probably two conversations with Mr. Kelly, who was the attorney that had called me and said I'm representing the defense. I'm representing, I don't know if you said the insurers or Lancet and or, but anyhow, he was the defense hired attorney for the case. And I was, of course, very anxious to find out whether they were going to be filing an answer or not. And we did have an upcoming hearing in early November, which is a basic status conference. So I contacted Mr. Kelly and I said, hey, you know, the judge is going to want to know because there had been no answer filed. And what do I tell him? And at that point, that was late October of 2015, Mr. Kelly informed me, well, you know, we're not going to be entering an appearance in the case. We're not going to be defending the case. So he told you he wasn't going to come in. Correct. And in fact, he didn't come in. He did not come in. And you got the default judgment. Correct, Your Honor. But I sent everything to Lancet. When I filed for the default judgment, I mailed a copy of that to Lancet because once Mr. Kelly informed me he was no longer in the case, very soon thereafter, coverage counsel for Lancet contacted me because I'd served a subpoena on Lancet to get records. So there was another lawyer who was called coverage counsel. Correct, Your Honor. Was he an inside in-house lawyer? No, Your Honor, he was not. He was a private practice lawyer there in Montgomery County? Actually, the firm is a national firm. The particular attorney was located, his office was in Florida, but they had D.C. counsel serving as local counsel. So they were both local and national. Anyhow, my point is that that right that they exercised. Was this coverage counsel the one that, to your understanding, made the decision not to show up, Mr. Kelly not show up? I have no knowledge. You don't know how they operate. I have no knowledge of that, Your Honor. This was like pennies from heaven for you. Well. I mean, you had a lawsuit and they gave it up. You got a default judgment. Well, Your Honor, and so my point is that I notified Lancet by mailing a copy of all of the paperwork that I filed. Well, I'm not saying that you didn't handle it properly. I'm just saying it was like a gift. I was basically doing everything I could to get them involved in the case. But the point is that Judge Rubin, also the trial judge for the malpractice case, once they had moved to become a party and that had been granted, and then they didn't appear at the default judgment hearing, and Judge Rubin was very exasperated about that. They didn't appear at the default judgment hearing either? No. And Judge Rubin said. You mean Lancelot had already become a party? Yes. They moved to become a party, and who was representing them then? Coverage counsel, Your Honor. Well, so they have a counsel of record. He's not going to tell us a name. He doesn't want to defame someone. You don't want to identify him. They had a counsel of record and he didn't show up. That's correct, Your Honor. Well, maybe they got a malpractice case there. The other one, somebody else. The point is that the trial judge, Judge Rubin, at that ex parte hearing, he was not happy that they did not show up, and he basically said, and the transcript is in the record, he said they sat on their hands and they're just waiting to see what happens here. They basically, where are they? So here's my point, is that Lancet is saying we didn't get in the case because we couldn't get in the case. Who was going to oppose that? Not me. I wasn't going to oppose them getting involved in the case. Judge Rubin was waiting for them to get involved in the case. Well, this goes all to the default judgment thing, which, frankly, I had not focused on until this moment, right? Yes, Your Honor. Because I gathered your colleagues on the other side argument was when originally looking at their obligations under the policy, they didn't think that they were a they had a client and therefore could not defend the policy. But he didn't talk about this default judgment. I didn't think, but he will have a chance to address it. And, Your Honor, just for the record, Judge Rubin, the transcript of that default judgment hearing is joint appendix 763 to 769 of the pages that I'm referencing. I want to switch gears slightly and address something that was raised in the briefs and hasn't been yet discussed this morning, and that is the Sherwood Brands v. Great American Insurance case, 2011, unanimous decision by the Court of Appeals of Maryland. The reason that case is extraordinarily important to this appeal is the Maryland Court of Appeals was presented with a claims-made and reported policy wherein the claim was made during the policy period, but the allegation was that the reporting was beyond the 90-day window to do so. So the claim from the insurance company was, you didn't comply with our claims-made and reported policy because you didn't report within the time frame. So the Court of Appeals of Maryland was faced with a decision. They were being urged by the insurance counsel to apply a strict condition proceeding approach to those policies. And quite honestly, Your Honor, most jurisdictions in the nation that have faced claims-made and reported policies have applied a strict condition proceeding approach, meaning that if you don't 100 percent comply with the making of a claim and 100 percent comply with the manner of reporting that claim, you're out. So the Court of Appeals had its opportunity to make that the law of Maryland, and they decided against it. So all of the decisions that Lancet is relying on in this case, the Dowdell decision out of Pennsylvania, and the decision cited by Dowdell, they apply the strict condition proceeding approach, which was rejected specifically by the Court of Appeals in the Sherwood-Brands case. What Sherwood-Brands decided was, yes, you strictly construe the coverage-triggering act. The coverage-triggering act was the making of a claim, and it is undisputed in this case, undisputed, that according to the policy, making a claim against Lancet was accomplished by filing the lawsuit. It didn't have to be served. It didn't have to be even provided to anybody. The policy says a claim is made by filing a civil lawsuit within the policy period. That was done, meaning that this claim was made, and the only question then is, was it reported? Now, of course, Lancet says it had to be reported by our insured. It can't be reported by plaintiff's counsel. It can't be reported by anybody. It has to be reported by our insured, and that's where the Sherwood-Brands case is key because what it said was, you separate those two components. The making of a claim, yes, we strictly construe that. If you don't make the claim in the policy period, there is no coverage because the policy ends, right? However, the reporting requirement is not viewed through a strict condition proceeding approach. It is viewed through the lens of notice prejudice, and the insurer has to demonstrate how it has suffered prejudice by the manner or timing of the notice. So unlike any other jurisdiction, and certainly any jurisdiction that is cited by Lancet, Maryland law says that you break those two components apart, meaning that in this case, when they complain that, oh, the policy says, as a condition proceeding to coverage, the insured must notify us, and plaintiff's counsel's notice was ineffective, that is not the law in Maryland. Under the Sherwood-Brands case, you look at what Lancet has the burden of demonstrating and what manner the notice to it prevented it from being able to mount a defense or begin the process of defending this case. In terms of, and as I'm sure this is going to come up in my very capable opponent's remaining time, I just want to mention this. Yes, in the, Judge Zinnes addressed this issue of limited liability retention act preemption, and the court hasn't asked any questions on that, but I do think that it did come up in the briefs, and I just wanted to address it very briefly. Judge Zinnes, initially on the notice, when she decided her notice decision in the March of 2017 memorandum, she said that the LRRA preempts the Maryland Notice Prejudice Statute, which is 19-110. I had argued it is not preempted based on 3901B of that statute, which says that notwithstanding anything else, states are to apply their law regarding the interpretation of insurance contracts. However, six months later, after the bench trial, after the judge had additional briefing, when she wrote her decision on the case, she changed her mind, and she said that 3901B of the LRRA, in fact, does allow the court to apply the Maryland Notice Prejudice Statute, which is 19-110. And undoubtedly, as they said in the brief, defense counsel or insurance counsel may say, well, I didn't cross appeal. The law of this circuit is, and I'm citing, referencing the country Vintner of North Carolina versus Gallo, that's at 718 Fed Third 249. Rosen-Royst v. Virgin Enterprises, that's at 511 F Third 437. And Reynolds v. American National Red Cross, 701 Fed Third 143. So long as I am not, so long as the appellee is not seeking to change, to enlarge the judgment down below in my favor or diminish the rights of the judgment down below for the appellant, any ground appearing in the record may be urged to support the appeal. And so my contention is that Judge Zinnes ultimately got it right, that the Maryland Notice Prejudice Statute does apply, and that her decision on notice I agree with. But as an alternate ground, I urge the court to find that notice needs to be evaluated under that statute, and the burden was on Lancet to demonstrate in what way getting notice from me prevented it from being able to begin the process of defending this case. In terms of the cooperation issue, we've already talked extensively. Basically, Lancet raises two arguments. I would call them an ethical bar and a factual bar, an evidentiary bar. The evidentiary bar is easy. Is an insurer required to accept the attorney of the insurer? In other words, are there instances in which the insured can have an attorney and the insurer can have one? Well, certainly, Your Honor, if there is excess exposure, it would be prudent, and I would think that yes. So yes, Your Honor, they can have their own counsel, but this policy addresses that specifically, and that Joint Appendix 84, which is the defense and settlement portion of the policy, the policy states that Lancet has the final say on who is the attorney representing the insured. They will listen to the insured's input as far as who they would like to have, but the ultimate decision is for Lancet, which makes sense because Lancet is paying the bill, and they get to decide. Did Lancet have the final say in so far as how the trial would be conducted? In other words, if the insured felt that the defense should be something different and Lancet felt differently, which one would control? Does the policy address that? Does the policy address that? Is that the question? Well, the policy doesn't address the specifics of who controls the litigation tactics. Lancet has the right to control the defense. That is undisputed. What does that mean, control the defense? Well, what that means is that they decide they're paying the bills. They get to decide. Well, it sounds like they could do litigation tactics. That's why I don't understand the distinction you're making here. Well, I guess what I'm saying is that what happens if there becomes a direct conflict? What if the insured, there are many instances where let's just say there was a case in this circuit where this came up. Let's just say outside of this negligence type of a situation, if there was also a claim that the physician had battered the patient. So that's not covered. That's a claim that's not covered. So counsel for the insured in that scenario has a problem because there's a claim against the insured that's not covered by the policy. Certainly, it would be Lancet's, this is hypothetical, it would be Lancet's motive if they wanted to, to have the verdict come down. That instance is pretty clear. Go on to the question here. The question was those things are covered. Do they have the right to steer the tactics one way or the other? Who controls that? And if your answer is it's their lawyer, they're paying for it, you seem to indicate that the tactics are controlled by the insurer. Well, ultimately, the lawyer has the professional responsibility for the case. And I think that an attorney's professional responsibility is to handle the case in the way that he or she deems is the most appropriate to get the right result. In these actions, and I don't remember what the initial complaint with Maryland law is on it, but when a plaintiff files an action in many of the states, they permit the defendant not to be named as the insurers in the policy because you don't want the jury to see the insurance company in there. Correct.  Absolutely, Your Honor. But the insurer, nonetheless, is that considered to be a party or is it assumed to be a party by statute that when you file an action against the insured, it includes the insurer so you don't have to name the insurer? To my knowledge, that is an issue. It's not an issue covered by statute. It's an issue covered by practice and procedure, and basically a judge would decide that. The insurance company is the real party in interest. Yes, well, in this case, yes. They have a million dollars at stake. They're the real party in interest. I just want to, and I only have a minute left, I just want to make one further observation. The Allstate v. State Farm case, which was mentioned by everybody, including Judge Zinnes, in this case, has a very interesting scenario that Kirby, who is the State Farm insured in that case, was contacted 84 times by State Farm. And Kirby never cooperated, no dispute. And, in fact, her cooperation was so egregious that the trial judge prevented any evidence favorable to Kirby being admitted. But here's my point. McBurroughs was the attorney assigned by State Farm to represent Kirby. He never had contact with his client. However, State Farm defended that case. Kirby was allowed to participate at trial, to ask questions, to give a closing argument, to cross-examine witnesses. That jury was not told that this lawyer standing here in front of you is an insurance lawyer. He hadn't had any contact with his client, and yet State Farm defended that case, and he represented the insured at trial. And that's analogous to what we're talking about in this case. Thank you, Your Honors. Thank you. Thank you. Just a couple of things in response. Lancet Insurance Company is a contractual indemnitory here. So, yes, they have a financial interest in what happens, but they're not a party in interest. When the case is decided, you're going to have to decide, besides could they have wanted to get in, did they want to get in, did they act like they wanted to get in, the question of how they can get in. And my response to that is it's not as easy as you can just go down to the courthouse and some willing judge and some conciliatory defense counsel is going to let you come to the table. You can bring a declaratory judgment action. We brought a declaratory judgment action. We did.  But to declare what? To declare that they're non-cooperation? Yes. But you have no duty to defend. Right. But you have no duty to defend. Well, there's nothing to defend. We didn't have – we could not defend. That's the point. There is no mechanism by which – what's the – there's no mechanism by which we get in to defend the case. Right. Often we bring – exactly. Often you bring a suit in which you think you're going to win. Usually you do. But the suit – the D.J. is not going to decide the issue of cooperation. The D.J. is not going to make these doctors do something different. The D.J. is not going to prevent a default judgment. The fact is he had so many days to answer, a default judgment was entered. And the question is how could the insurance company have got in to prevent that? How? Could Mr. Kelly have done it? If you all decide legally an attorney can enter an appearance for a client they've never spoken with, then that will be one mechanism. If you all decide that legally an insurance company can now inject itself in a lawsuit and should, even though the law says in Maryland they shouldn't, then that would be the other mechanism. Beyond that, there is no mechanism. So it's – while intuitively everyone agrees that something should have happened here, procedurally there are rules of court. There are semantics about parties and who the parties are. Did the insurer here make any appearance whatsoever at any time in any matter concerning this case to the court? So under the Maryland precedent, Hartford v. Woodfin says that an insurance company should not be a party to the case at all, the tort case, until after the liability of the insurer is established. The insurance company, after the default was entered, but before the default judgment, went before Judge Rubin in Montgomery County and said, we intervene for the limited purpose of asking you to stay the damages trial of this case until after the declaratory judgment. That's the limited purpose for which they intervened. That was it, after, after the liability had been determined. And that's what the Hartford v. Woodfin case says. It says that an insurance company is not a proper party to a lawsuit until after the liability phase has been determined. So the insurance company did what they thought they were supposed to do and waited until that happened. That case is a medical malpractice case? No, I don't think it was a medical malpractice case. Basically, the issue before the case was when, is it, when can an insurance company get in to say? In what type of case? It was a liability defense case. I'm not sure of the exact context. You've got different types of insurance. This is not compulsory insurance, is it? But the principles are the same. The terms of the policy are the same. And that's what is, I think, overriding this. Well, it's got to be different than compulsory insurance. You've got an auto bill policy. You probably wouldn't be standing here arguing this because the state probably requires you to have it. I assume Maryland does. But you're here because this is not compulsory insurance. I believe that Woodfin was a general liability case. But the principle is that an insurance company is not a proper party to a lawsuit. That's to protect the insurance company. What's that? That's to protect the insurance company. That's to protect the insurance company from, and it's a procedural rule. Because sometimes, as a council authority. Protect it from a jury thinking they've got a deep pocket sitting over there. Well, and that's exactly what happened. You want the insured sitting there rather than the insurance company sitting there. It goes to the second point is that if that's the rule, if the rule you fashioned is that the insurance company could have gotten itself in the case, then the Maryland case law says that's already prejudice. That the insurance company defending his name is prejudice. That's exactly what the Woodfin court says. It's prejudicial to injection of insurance into the case is itself prejudicial. So either way they have it, either there's no way for us to get in. If you all decide we could have got in on our own name, then we have to defend in our own name, then Maryland law already holds that that's prejudicial. So either way, the non-cooperation here bars coverage. And moving quickly to the issue of who can give proper notice of a lawsuit or a claim under a claims made and reported policy. There's a healthy body of case law, as council acknowledged, holding that in a claims made and reported policy. The claimant can't give notice. The notice has to come because of the unique nature of the policy. The notice has to come from the insurers themselves. And there's a lot of Maryland case law about the interplay between that and the Sherwood case you mentioned, section 19.110 in Maryland, which says you have to have prejudice. Well, the trial court here correctly held that 19.110 does not apply to this liability risk retention group because under the Liability Risk Retention Act, a company is domiciled in one state, they can do business, and they can be registered to do business in all other states, but the law of the domiciliary state is what applies to them. So they did not, in order to deny coverage on that ground, they were not obligated to show prejudice at all. So basically, this claims made and reporting concept designates one point of contact who can report claims, so there's not confusion about who reported or when it was reported because the whole policy itself is teed off of when that report comes in. That's when coverage attaches. Thank you, Your Honors. Thank you very much. Do you want to take a break? I need a break. Yes, okay. We will come down and greet the lawyers, and then we'll take a short recess. This honorable court will take a brief recess.
judges: Diana Gribbon Motz, Robert B. King, James A. Wynn Jr.